IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| ASHLEY BARBER, Plaintiff | ) | No. 1:25-CV-00099-RAL |
| vs. | ) | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| LISA GRAVES, *et al*, Defendants | ) | MEMORANDUM OPINION<br>IN RE: ECF NO. 17 |

Plaintiff Ashley Barber a/k/a Dominic Barber filed this action under 42 U.S.C. § 1983 against ten employees of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institution at Cambridge Springs ("SCI-Cambridge Springs"). *See* ECF No. 11. Defendants have moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 17. For the reasons explained below, the motion will be granted in part and denied in part.[1]

I. Factual Allegations

The following factual allegations of the Complaint are accepted as true for purposes of Defendants' pending motion.

Plaintiff is a transgender man incarcerated at SCI-Cambridge Springs, a women's prison.[2] ECF No. 11, ¶¶ 3, 41. He presents as male following hormone

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings under 28 U.S.C. § 636.

[2] Plaintiff uses masculine pronouns to refer to himself. The Court will do the same.

therapy and a double mastectomy; he has been diagnosed with gender dysphoria, antisocial personality disorder, panic disorder, and depressive disorder. *Id.* ¶¶ 41–42. The Defendants are the following SCI-Cambridge Springs officials:

- Lisa Graves, Superintendent;
- Howard Sissem, Deputy Superintendent;
- Valerie Kusiak, Deputy Superintendent;
- Jamie Rodriguez, Major of the Guard;
- Dr. Desiree Lucas, Psychology Manager;
- Shannon Anderson, Health Care Administrator;
- James Hicks, Intelligence/Security Captain;
- Michael Cole, PREA Compliance Manager;
- Cortney Nath, PREA Captain; and
- Amy Boylan, Inmate Grievance Officer.

*Id.* ¶¶ 5–14. Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, and Cole are members of the prison's PREA Incident Review Committee. *Id.* ¶¶ 6–14. Each Defendant is sued in his or her individual and official capacities.

The events that form the basis for this litigation began on the morning of August 24, 2024, when Elizabeth Eles, another inmate at SCI-Cambridge Springs, grabbed Plaintiff's buttocks while he was waiting in the Building #3 medication line.[3] *Id.* ¶ 16. That same day, Plaintiff reported Eles' unwanted sexual contact by filing a report under the Prison Rape Elimination Act ("PREA") with security staff. *Id.* ¶ 17.

[3] The Court previously dismissed Plaintiff's claims against Eles. *See* ECF No. 28.

Despite this report, Eles continued to pursue Plaintiff. On August 26, 2024, Eles followed Plaintiff to a recreation area and professed her love for Plaintiff. *Id.* ¶ 18. On August 27, 2024, Eles announced to Plaintiff's housing unit that she "can't touch butts today apparently" and told several inmates nearby that Plaintiff had filed a PREA Report against her. *Id.* ¶ 19. On September 2, 2024, Eles tried to kiss Plaintiff's face and announced to nearby inmates that she was Plaintiff's new girlfriend. *Id.* ¶ 20. The next day, Eles pushed Plaintiff's cellmate off the sidewalk so that she could stand near Plaintiff. *Id.* ¶ 21. On September 4, 2024, Eles banged on a window and shouted for Plaintiff while again professing her love for him as she kissed the window. *Id.* ¶ 22. On September 6, 2024, Eles followed Plaintiff to the yard, sat at the same table as Plaintiff, and asked Plaintiff if he would have sex with her. Plaintiff asked Eles to leave. *Id.* ¶ 23. On September 7, 2024, Eles tried to kiss Plaintiff on the mouth. *Id.* ¶ 24.

On September 8, 2024, Plaintiff filed a second PREA Report with Lt. Knox at the Building #3 Security Office concerning the incidents between August 26 and September 7, 2024. *Id.* ¶ 25. The following day, Eles was moved from Plaintiff's housing unit (Echo Alpha) to the adjoining housing unit (Echo Bravo). *Id.* ¶ 26. On September 12, 2024, Eles tossed a folded yellow paper onto Plaintiff's meal tray during lunch. The content of the letter was sexual and included a kiss print and Eles' signature. *Id.* ¶ 27. On September 12, 2024, Plaintiff filed a 3rd PREA Report with Lt. Diehl and Lt. Herschmann. *Id.* ¶ 28.

Prior to Eles' pursuit of Plaintiff, she had abused or harassed at least three other inmates. These inmates were relocated within twenty-four hours of reporting Eles' conduct, and Eles received misconduct discipline for her conduct. *Id.* No more than thirty days before Eles pursued Plaintiff, officials moved a different inmate from Eles' unit after that inmate filed a PREA report against her. *Id.* ¶ 41.

On September 13, 2024, Plaintiff filed a grievance asserting that staff had failed to follow PREA policy. *Id.* ¶ 29. That grievance was returned as rejected on September 17, 2024. *Id.* ¶ 30. Plaintiff filed a revised grievance on September 21, 2024, which was likewise rejected on September 24, 2024. *Id.* ¶¶ 31–32. Plaintiff appealed to the Central Office the same day. *Id.* ¶ 33. The appeal was rejected on October 13, 2024. *Id.* ¶ 34. Several months later, on January 29, 2025, Plaintiff received a Class 1 misconduct charge for lying to an officer in his August 24 PREA report. *Id.* ¶ 35. The Complaint does not identify who issued the misconduct charge. The misconduct charge was dismissed with prejudice after a hearing on February 6, 2025. *Id.* ¶ 36.

Plaintiff alleges that he suffered a range of injuries as a result of Eles' harassment, including a violation of bodily integrity, exacerbated gender-dysphoria symptoms, anxiety, depression, sleep loss, suicidal ideation, hypervigilance, and related psychological effects. *Id.* ¶ 53.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.

1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Although a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Finally, because the Plaintiff is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd,* 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

III. Discussion and Analysis

A. Summary of Claims

Plaintiff's Complaint lists five causes of action: (1) First Amendment violation, (2) Fourth Amendment violation, (3) Eighth Amendment violation, (4) Fourteenth Amendment violation, and (5) PREA violation. But the Complaint does not specifically identify the Defendant(s) against whom he asserts each claim. Based on his allegations, the Court associates the following Defendants with each claim:

- First Amendment claim: Defendant Boylan, based on her rejection of Plaintiff's grievance (ECF No. 11, ¶ 37);

- Fourth Amendment claim: Graves, Sissem, Kusiak, Rodriguez, Anderson, Hicks, Cole, and Nath based on Eles' harassment of Plaintiff having occurred during their shifts and oversight responsibility (*Id.* ¶ 38);
- Eighth Amendment failure-to-protect claim: Graves, Sissem, Kusiak, Rodriguez, Anderson, Hicks, Cole, and Nath (*Id.* ¶ 39);
- Fourteenth Amendment "access-to-courts" claim: Boylan alone based on her rejection of his grievances (*Id.* ¶ 40);
- Fourteenth Amendment equal-protection claims: Graves, Sissem, Kusiak, Rodriguez, Cole, Anderson, Hicks, Nath, Lucas, and Boylan (*Id.* ¶¶ 41–43);
- PREA violation claim: Graves, Sissem, Kusiak, Rodriguez, Lucas, Anderson, Cole, and Nath; (*Id.* ¶ 44); and
- State law claim under 18 Pa. C.S. § 3124.1: Graves, Sissem, Boylan, Rodriguez, Cole, and Kusiak. (*Id.* ¶ 58).[4]

B. The Complaint fails to support the personal involvement of Defendants Boylan or Graves.

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege facts to support that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Est. of Smith v. Marasco*, 430 F.3d 140,

[4] Somewhat confusingly, the "Claims for Relief" (ECF No. 11, ¶¶ 54–57) re-plead the failure-to-protect theory against groups of defendants that do not match the those named in the counts identified above. Paragraph 55 names Graves, Sissem, Cole, Lucas, Anderson, Hicks, and Rodriguez, omitting Kusiak, Nath, and Boylan. Paragraph 56 names Graves, Nath, Sissem, Cole, Anderson, Lucas, and Rodriguez, omitting Kusiak, Hicks, and Boylan. Paragraph 57 names only Nath, Hicks, and Cole. The declaratory relief request (*id.* ¶ 59) and the compensatory damages request (*id.* ¶ 61), by contrast, sweep in all ten Defendants.

151 (3d Cir. 2005). This means that the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). A defendant was personally involved only if he played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677.

"[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement." *Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013). Involvement in the grievance process typically follows the conduct or events upon which the plaintiff bases his claim. An officer's after-the-fact review of a grievance does not constitute involvement in the underlying alleged misconduct, and courts have therefore routinely dismissed civil rights claims against prison officials whose only knowledge of the alleged violation stemmed from their participation in the grievance process. *See, e.g., Beale v. Wetzel*, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (dismissing claims against senior prison officials because the only allegations against them arose in the context of their participation in an administrative appeal process); *Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). Because Boylan's only alleged involvement in the facts of this case was her rejection of Plaintiff's grievances, the Complaint fails to support her personal involvement in Eles' misconduct.

Furthermore, Plaintiff's allegation that Boylan wrongfully rejected her grievances does not support a claim against her. Because a prisoner has no right to a grievance process, a defendant's "alleged obstruction of such procedures is not independently actionable." *Heleva v. Kramer*, 214 Fed. Appx. 244, 247 (3d Cir. 2007) (per curiam); *Keziah v. Terra*, 2026 WL 1133089, at *4 (E.D. Pa. Apr. 27, 2026) (dismissing with prejudice "claims based on the Defendants' handling of his grievances or efforts to restrict him from filing future grievances") (citations omitted). If Boylan wrongfully impeded Plaintiff's ability to file a grievance, this may have rendered that remedy unavailable, thereby excusing the requirement that Plaintiff exhaust the grievance procedure before filing suit.[5] *See Scutella v. Erie Cnty. Prison*, 2023 WL 8935252, at *2 (W.D. Pa. Dec. 1, 2023), *report and recommendation adopted*, 2023 WL 8934880 (W.D. Pa. Dec. 27, 2023). But it would not give rise to an independent access-to-court claim against Boylan. *Id.* Furthermore, although Plaintiff alleges that he sustained anxiety, depression, exacerbated gender dysphoria, and other injuries due to Eles' harassment, he does not allege the type of injury necessary to support an access-to-court's claim. As evidenced by his having filed this lawsuit, Boylan's alleged mishandling of his grievance did not cause him to lose the right or ability to assert his claims. Absent such an injury, Plaintiff cannot state an

---

[5] The Prison Litigation Reform Act requires plaintiffs to exhaust only those administrative remedies that are "available." *See Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002) (holding that an administrative remedy is not "available" under the PLRA where prison authorities thwart a prisoner's efforts to exhaust administrative remedies."). If prison officials took actions that rendered Plaintiff's grievance or other administrative remedies unavailable, he will be excused from exhausting them. *See, e.g., Estien v. Showalter*, 2018 WL 4310188, at *17 (M.D. Pa. Sept. 28, 2017) ("Notably, if Plaintiff could show that prison authorities prevented him from timely filing, then he would be able to proceed ...").

access-to-courts claim. Accordingly, all claims against Boylan, including Plaintiff's First Amendment access-to-court claim, will be dismissed with prejudice.

The Complaint alleges that Defendant Graves serves as the Superintendent of SCI-Cambridge Springs and "is responsible for all administrative staff and inmates alike, reviewing all PREA reports made by inmates and oversees inmate safety." ECF No. 11, ¶ 5. The Complaint includes no other factual allegations against Graves. Although it alleges broadly that she reviews "all PREA reports," it does not allege that she was personally involved in any investigation or disposition of Plaintiff's PREA complaint or any decision regarding Eles. Plaintiff's claims against Graves are based solely on her title and supervisory responsibilities. Such claims fail as a matter of law based on lack of personal involvement. *See Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ..., each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). The claims against Defendant Graves also will be dismissed with prejudice.

C. The Complaint alleges facts sufficient to state an Eighth Amendment failure-to-protect claim against Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, Cole, and Nath.

The principal theory of liability implicated by the facts alleged in the Complaint is an Eighth Amendment claim based on Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, Cole, and Nath's failure to protect him from Eles. Like all Eighth Amendment cruel-and-unusual-punishment claims, this theory of liability has two essential components: "the 'objective component ... (Was the deprivation sufficiently serious?)' and the 'subjective component (Did the officials act

with a sufficiently culpable state of mind?)' ...." *Hudson v. McMillian*, 503 U.S. 1, 21 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A plaintiff asserting a failure-to-protect claim satisfies the "sufficiently serious" deprivation component by demonstrating that he was incarcerated under conditions posing a substantial risk of serious harm. *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). The plaintiff satisfies the "culpable state of mind" component by demonstrating that the defendant was deliberately indifferent to that risk, meaning the defendant knew of and disregarded an excessive risk to the plaintiff's safety. *Id.*; *see also*, *Tyson v. Eng.*, 2025 WL 4482275, at *5 (W.D. Pa. Apr. 15, 2025) (quoting *Hamilton*), *report and recommendation adopted*, 2026 WL 114240 (W.D. Pa. Jan. 15, 2026).

Thus, as a threshold issue, the Court must determine whether Eles' harassment created a substantial risk of serious harm to Plaintiff. The Complaint alleges that Plaintiff endured Eles' harassment over a period of sixteen days and that the harassment consisted of one instance of physical contact (Eles' grabbing his buttocks on August 26, 2024), at least one instance of attempted physical contact (Eles' attempt to kiss Plaintiff on September 7, 2024), and instances of Eles publicly and privately expressing affection for Plaintiff and soliciting sexual contact.

Few cases address when inmate-on-inmate sexual harassment is sufficiently serious to support an Eighth Amendment failure-to-protect claim, but courts in this Circuit have addressed inmate sexual harassment by corrections staff. In *Ricks v. Shover*, the Court of Appeals for the Third Circuit held that sexual abuse or

harassment by prison officials against inmates is to be evaluated using the *Hudson* objective/subjective test for cruel and unusual punishment claims. 891 F.3d 468, 475 (3d Cir. 2018). For purposes of the objective prong, the Court rejected a "zero tolerance" standard "for all minor sexualized touching in prison." *Id.* at 475, 477. Instead, the Court adopted an "inquiry" that "is necessarily contextual" and "fact-specific." *Id.* Having said that, the Court added that "objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* And the Court noted that the absence of physical force or physical injury does not preclude a finding that the harassment was sufficiently serious:

> [T]he absence of force or injury will not doom a sexual abuse claim outright. Although physical injury will certainly signal severity, it is not the touchstone for objective seriousness. Whether an action is sufficiently harmful to be cruel and unusual cannot be determined only by looking at physical injury, because an abusive sexual encounter may not leave any marks. Indeed, sexual abuse "tend[s] rather to cause significant distress and often lasting psychological harm."

Id. at 477 (quoting *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012)). But verbal harassment alone does not support a claim. "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment." *Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)

(rejecting the Eighth Amendment claim of a prisoner who alleged that he "was verbally harassed, touched, and pressed against without his consent" because "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious'")).[6]

In this case, over sixteen days, Eles grabbed Plaintiff's buttocks on one occasion, attempted to kiss him on another occasion, professed her love for and attraction to him on multiple occasions, and solicited sexual contact on one occasion. In evaluating whether these incidents satisfy the objective component of an Eighth Amendment claim, the Court is mindful that, as this is a transsexual male in a women's prison, Plaintiff is more susceptible and vulnerable to sexual abuse and harassment than most inmates. *See e.g., Farmer*, 511 U.S. at 830-31 (recognizing greater vulnerability of transgender inmates to sexual assault when placed in general prison population). Furthermore, Plaintiff alleges that he has been diagnosed with multiple mental health conditions, including gender dysphoria, which reasonably could be expected to exacerbate his vulnerability to sexual abuse and harassment. Although Plaintiff alleges only a single instance of unwanted physical contact and

[6] Several other Courts of Appeals have held that sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction. *See, e.g., Howard v. Everett*, 2000 WL 268493, at *1 (8th Cir. Mar.10, 2000) (sexual comments and gestures do not unduly and wantonly inflict pain); *Murray v. United States Bureau of Prisons*, 106 F.3d 401 (6th Cir.1997) (offensive remarks regarding a transsexual prisoner's appearance, lifestyle, and presumed sexual preference do not state an Eighth Amendment claim); *Morales v. Mackalm*, 278 F.3d 126, 129 (2d Cir.2002) (demand for sex in front of other female staff does not rise to the level of an Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n .11 (10th Cir.1998) (severe verbal sexual harassment and intimidation are not sufficient to state a claim under the Eighth Amendment); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir.2006) (solicitation of prisoner's masturbation, even under threat of retaliation, does not violate the Eighth Amendment); *Samford v. Staples*, 249 Fed. Appx. 1001 (5th Cir.2007) (prisoner's allegations of humiliation and depression, but no physical injury, from a strip search conducted in a public hallway, fail to state an Eighth Amendment claim).

only one instance of attempted contact, viewed in the context of Eles' other unwanted advances and Plaintiff's increased vulnerability to sexual harassment, the Court finds that the facts alleged in the Complaint are sufficient at this stage of the case to support the objective element of Plaintiff's Eighth Amendment claim.

As to each Defendant against whom this claim is asserted, however, the facts must also support a plausible inference of deliberate indifference. And before the Court considers whether the allegations support the requisite state of mind, the personal involvement of each Defendant must be established. *See Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Rode*, 845 F.2d at 1207 (liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Dooley*, 957 F.3d at 374 (liability must be demonstrated by showing that the defendant personally directed or, with actual knowledge, acquiesced in the conduct).

The crux of Plaintiff's failure-to-protect claim is that prison officials unreasonably delayed in separating him from Eles after he submitted his PREA complaints. Plaintiff does not allege specifically who received, reviewed, or investigated his complaints or who determined the timing of the order to separate Eles from him. But he identifies Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, and Cole as members of the prison's PREA Incident Review Committee. In the context of his other allegations, Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, and Cole's involvement in the prison's PREA Incident Review Committee is sufficient to support a plausible inference that they

were aware of the initial PREA complaint and Plaintiff's particular vulnerability to abuse and harassment.[7] Furthermore, although Plaintiff does not identify Defendant Nath as a member of the PREA Incident Review Committee, he does allege that Nath, as SCI-Cambridge Springs' PREA Captain, oversaw PREA procedures, reports, and incidents. ECF No. 11, ¶ 14. At this stage of the case, this allegation is also minimally sufficient to support Nath's personal involvement and a plausible inference that he also was aware of the initial PREA complaint and Plaintiff's particular vulnerability to abuse and harassment.

The Complaint also alleges that officials had, within the preceding thirty days, moved a different inmate from Eles' unit after that inmate filed a PREA report against Eles. *Id.* ¶ 43. This allegation further supports a plausible inference that the Defendants had actual knowledge of the risk Eles posed. Whether the institutional response to this risk, including the transfer of Eles to an adjoining housing unit on September 8, 2024, was constitutionally adequate presents a factual question that cannot be resolved on the present motion.

---

[7] The Court notes that the precise functions of the PREA Incident Review Committee are presently unclear. Based on Plaintiff's pro se status, the Court is construing his allegations liberally and inferring that the members of this Committee had a role in reviewing and determining how to respond to Plaintiff's PREA complaints. Of course, Defendants may dispute this inference based on a more developed record. For example, if that Committee's sole function was to conduct the review contemplated by 28 CFR § 115.86, this function would not, alone, support the personal involvement of its members. A "sexual abuse incident review" under § 115.86 "is conducted at the conclusion of every substantiated and unsubstantiated sexual abuse investigation" and "is intended to evaluate whether any changes in policy or practice at the facility need to be made in light of the alleged incident." *Id.* This review occurs only after an investigation and determination of substantiated or unsubstantiated report are concluded, and the review is solely to determine whether changes in policy and procedure are necessary.

Accordingly, the Court will deny Defendants' motion to dismiss as to Plaintiff's Eighth Amendment failure-to-protect claim against Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, Cole, and Nath.

D. The Complaint alleges facts sufficient to state a Fourteenth Amendment equal protection claim against Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, Cole, and Nath.

To state an equal protection claim, a plaintiff must allege facts to support that he was treated differently from other similarly situated persons and that the differential treatment was either the product of intentional discrimination based on a protected characteristic or unsupported by any rational basis. *See Smith v. Renaud*, 2026 WL 2445430, at *4 (W.D. Pa. Aug. 20, 2026) (citing *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir. 2020)). Plaintiff bases his Fourteenth Amendment equal protection claim on his allegations that, as a transgender male, he was treated less favorably than female inmates who reported abuse by Eles. He asserts that multiple female inmates were relocated within twenty-four hours of reporting Eles' abuse while the Defendant members of the PREA Investigation Review Committee and Nath left Eles in a position to continue to harass Plaintiff for sixteen days before moving her to a new housing unit. *Id.* ¶¶ 41, 43. These allegations support a plausible inference that Plaintiff was treated differently than similarly situated female inmates based on his transgender status and, potentially, without a rational basis for such treatment. The Court will therefore deny Defendants' motion to dismiss as to Plaintiff's Fourteenth Amendment equal protection claim. Because the Court's review is currently confined to the allegations of the Complaint, any

consideration of facts beyond the face of the Complaint that relate to the differing treatment of Plaintiff must await a more developed record.

E. The Complaint fails to state a Fourth Amendment claim against any Defendant.

Plaintiff alleges that Defendants Graves, Sissem, Kusiak, Rodriguez, Cole, Hicks, Anderson, and Nath are liable for violation of his Fourth Amendment "right to be secure" because Eles' sexual abuse and harassment occurred during their "shifts and management." ECF No. 11, ¶ 38. This claim fails because the Fourth Amendment's prohibition of unreasonable searches and seizures does not extend to the Defendants' alleged conduct. *See McClain v. Harry*, 2026 WL 2110465, at *3 (W.D. Pa. July 22, 2026). Plaintiff's allegations do not implicate a search or a seizure; indeed, prisoners retain virtually no legitimate expectation of privacy in prison. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984); *Brown v. Harry*, 2026 WL 1678892, at *6 (W.D. Pa. June 10, 2026) (citing *Hudson*). The Court will therefore grant the Defendants' motion to dismiss as to Plaintiff's Fourth Amendment claim and dismiss this claim with prejudice as to all Defendants.

F. Neither the PREA, prison regulations, nor the criminal statutes cited by Plaintiff provides him a private right of action.

Plaintiff asserts a claim for violation of PREA and DC-ADM 008. *See* ECF No. 11, ¶¶ 44–51. PREA does not create a private right of action enforceable under § 1983. *See Knight v. McGuire*, 2026 WL 886320, at *2 (W.D. Pa. Mar. 31, 2026). The same is true of the DOC's policies that implement it. *See Bullard v. Scism*, 449 Fed. Appx. 232, 235 (3d Cir. 2011) (holding that violations of prison regulations are not

actionable under § 1983). Therefore, Plaintiff's stand-alone claims based on alleged violations of PREA and DC-ADM 008 will be dismissed with prejudice. The Court notes, however, that alleged failures to follow PREA-related policy and procedure may be relevant to the issue of deliberate indifference with respect to Plaintiff's Eighth Amendment claim.

Plaintiff's pleading also invokes several federal and state criminal statutes, including 18 U.S.C. §§ 2243, 2244, and 1510, and 18 Pa. C.S. § 3124.1. *Id.* ¶¶ 39, 58. These criminal statutes similarly do not confer a private civil cause of action. *See Rorvik v. Bucks Cnty., Pennsylvania*, 2026 WL 2045075, at *2 (E.D. Pa. July 15, 2026) (noting that "criminal statutes generally do not give rise to a basis for civil liability") (citing *Brown v. City of Phila. Office of Hum. Res.*, 735 Fed. Appx. 55, 56 (3d Cir. 2018). Any claim premised on the cited criminal statutes also will be dismissed with prejudice.

G. The Complaint fails to state a First Amendment retaliation claim.

To establish a claim for retaliation under the First Amendment, a plaintiff must show: "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir.1997)). Plaintiff alleges that on January 29, 2025, he was issued a Class 1 misconduct charge for lying to an officer in retaliation for his having filed the PREA

report on August 24, 2024. ECF No. 11, ¶¶ 35–36. The filing of a PREA report or a grievance is constitutionally protected conduct. *See Nestor v. Allegheny Cnty. Pennsylvania*, 2025 WL 849459, at *5 (W.D. Pa. Jan. 16, 2025); *Cruz v. Giroux*, 2020 WL 1442953, at *4, fn. 3 (W.D. Pa. Feb. 5, 2020), *report and recommendation adopted*, 2020 WL 1436959 (W.D. Pa. Mar. 24, 2020). But Plaintiff's retaliation claim fails at the "adverse action" element for two reasons. First, he does not identify which Defendant, if any, filed the misconduct charge against him. Second, he acknowledges that the misconduct charge was later dismissed. ECF No. 11, ¶ 36. Our Court of Appeals has held that a misconduct against an inmate for filing a false report that is later dismissed "does not rise to the level of 'adverse action' because it would not be 'sufficient to deter a person of ordinary firmness' from exercising his First Amendment rights.'" *Brightwell*, 637 F.3d at 194 (cleaned up) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.2000); *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir.2000)); *cf. Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir.2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." (citation omitted). Accordingly, even if Plaintiff had identified a Defendant as the subject of his retaliation claim, that claim would still fail because the misconduct charge that he asserts as the "adverse action" to support the claim was dismissed. The Court will therefore grant Defendants' motion to dismiss as to Plaintiff's First Amendment retaliation claim and will dismiss this claim with prejudice.

H. Plaintiff's Fourteenth Amendment substantive due process claim is barred by the "more specific provision" rule.

At paragraph 40 of the Complaint, Plaintiff appears to raise a Fourteenth Amendment substantive due process claim against Defendant Boylan based on Boylan's "denying him a right to exhaust." ECF No. 11, ¶ 40. As explained above, all claims against Boylan fail based on her lack of personal involvement. In addition, any substantive due process claim in this case is barred by the "more specific provision rule," which provides that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Because the conduct upon which Plaintiff bases his substantive due process claim is specifically within the reach of more specific provisions, including the First and Eighth Amendments, his substantive due process claim fails as a matter of law and will be dismissed with prejudice. *See, e.g., Jackson v. Irwin*, 2025 WL 4112930, at *10 (W.D. Pa. Aug. 22, 2025), *report and recommendation adopted*, 2026 WL 313173 (W.D. Pa. Feb. 5, 2026).

I. Plaintiff's state law claims fail as a matter of law and are barred by sovereign immunity.

Plaintiff's Complaint invokes 18 Pa. C.S. § 3124.1 and state tort principles as the basis for unspecified claims. ECF No. 11, ¶¶ 55, 58. As previously noted, § 3124.1 is a criminal statute that affords Plaintiff no private civil remedy. To the extent Plaintiff asserts common-law intentional tort claims against the institutional Defendants, those Defendants are protected by sovereign immunity for conduct within the scope of their employment. *See* 1 Pa. C.S. § 2310; 42 Pa. C.S. §§ 8521–8522. No statutory exception to immunity applies. Accordingly, any state law claims raised by the Complaint will be dismissed with prejudice.

J. Plaintiff has no claim for money damages against Defendants in their official capacities.

Plaintiff sues the Defendants in both their individual and official capacities. *See* ECF No. 11, ¶¶ 5–14; 61. To the extent he seeks money damages against them in the official capacities, his claims will be dismissed with prejudice. A suit against a state official in his or her official capacity is a suit against the State, and a State is not a "person" amenable to suit for damages under § 1983. *Sledge v. Doe*, 2026 WL 1878497, at *4 (W.D. Pa. June 30, 2026) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Further, the Eleventh Amendment independently bars such claims.[8] *See, e. g., Washington v. Citizens Bank*, 2026 WL 2491778, at *8 (E.D. Pa. Aug. 25, 2026) (citing *Will*, 491 U.S. at 70–71)).

IV. Leave to Amend

[8] The Plaintiff also seeks declaratory and injunctive relief. ECF No. 11, ¶¶ 60-61. The Eleventh Amendment does not bar prospective injunctive relief against state officials in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908).

Where a civil rights complaint is subject to dismissal, a pro se plaintiff ordinarily must be granted leave to amend unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Any attempt to amend regarding the claims identified for dismissal herein would be futile. The Court will therefore dismiss those claims with prejudice.

V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be GRANTED in part and DENIED in part as follows:

1. The motion will be granted as to:

   a. all claims against Defendants Boylan and Graves;

   b. Plaintiff's claims for violation of PREA and DOC regulations;

   c. Plaintiff's claims based on violations of state and federal criminal statutes;

   d. Plaintiff's First Amendment retaliation claim;

   e. Plaintiff's Fourteenth Amendment substantive due process claim;

   f. Plaintiff's state law tort claims; and

   g. all claims for monetary relief against Defendants in their official capacities.

Because any attempt to amend to cure the deficiencies in the foregoing claims would be futile, these claims will be DISMISSED with prejudice.

2. The motion will be denied in all other respects. The following claims will remain pending following the Court's Order: Plaintiff's Eighth Amendment

failure-to-protect claim against Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, Cole, and Nath; and Plaintiff's Fourteenth Amendment equal protection claim against Defendants Sissem, Kusiak, Rodriguez, Lucas, Anderson, Hicks, Cole, and Nath.

A separate order follows.

DATED this 22nd day of September, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE